# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 9, 2022

Lyle W. Cayce
Clerk

No. 21-11046

Ferrer & Poirot, GP; Ferrer & Poirot, PC, *doing business as* Ferrer, Poirot, Wansbrough, Feller, Daniel, Abney; 2603 Oak Lawn, L.P.,

*Plaintiffs—Appellants*,

*versus*

The Cincinnati Insurance Company,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-CV-3286

Before Higginbotham, Higginson, and Oldham, *Circuit Judges*.

Per Curiam:

Ferrer & Poirot, a law firm with offices in Dallas, Texas and Atlanta, Georgia, sued to recover lost income and expenses attending the COVID-19 pandemic under an insurance policy issued by The Cincinnati Insurance Company. The district court dismissed Ferrer's claims. We affirm.

## I.

In the early stages of the COVID-19 pandemic, when state and local authorities issued orders requiring individuals to stay home except for

essential trips, most of Ferrer's workforce worked remotely. Ferrer also purchased equipment and supplies used to prevent the spread of the virus and facilitate remote work.

Ferrer filed a claim with Cincinnati Insurance to recover the costs of equipment and supplies and lost income. Ferrer's insurance policy provided property damage, business income, extra expense, and civil authority coverage. Cincinnati Insurance denied Ferrer's claim.

Ferrer sued, alleging that Cincinnati Insurance's denial was a breach of contract. In its Amended Complaint, Ferrer alleged that the physical presence of the virus caused its loss and met the policy's conditions.

Cincinnati Insurance moved to dismiss Ferrer's claims under Federal Rule of Civil Procedure 12(b)(6). The district court referred the motion to a magistrate judge, who analyzed the policy and concluded that no coverage was owed as there was no physical loss. The district court adopted its findings and conclusions, granted Cincinnati Insurance's motion to dismiss, and dismissed Ferrer's claims with prejudice. Ferrer timely appealed.

## II.

We review *de novo* a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).[1] To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[2] We accept all facts as pleaded and view them in the light most

---

[1] *Waste Mgmt. of Louisiana, L.L.C. v. River Birch, Inc.*, 920 F.3d 958, 963 (5th Cir. 2019).

[2] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

No. 21-11046

favorable to the plaintiff.[3] The district court's interpretation of an insurance policy is a question of law that we also review *de novo*.[4]

### III.

The COVID-19 pandemic has brought myriad claims of insurance coverage.[5] When this suit was filed in October 2020, we had not addressed the issue presented here. But this Court recently interpretated similar coverage provisions in *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*,[6] and that analysis guides us here.

We have diversity jurisdiction and Texas law applies.[7] "In Texas, insurance policies are interpreted by the same principles as contract construction."[8] "The policy's terms are given their ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense."[9] Where a policy's terms can be given definite or certain legal meanings, it is unambiguous.[10] "The paramount rule is that

---

[3] *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

[4] *Cody v. Allstate Fire & Cas. Ins. Co.*, 19 F.4th 712, 714 (5th Cir. 2021) (per curiam).

[5] *See, e.g.*, *Vandelay Hosp. Grp. LP v. Cincinnati Ins. Co.*, No. 3:20-CV-1348-D, 2021 WL 2936066 (N.D. Tex. July 13, 2021); *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 456–57 (5th Cir. 2022) (listing 2021 decisions from the Second, Sixth, Seventh, Eighth, Ninth, Tenth, and Eleventh Circuits, including three cases involving Cincinnati Insurance).

[6] 22 F.4th 450.

[7] 28 U.S.C. §1332; *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

[8] *Terry Black's Barbecue*, 22 F.4th at 454 (citing *State Farm Lloyds v. Page*, 315 S.W.3d 525, 527 (Tex. 2010)).

[9] *Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010).

[10] *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995) (per curiam).

courts enforce unambiguous policies as written."[11] Here, the policy's terms are defined and unambiguous.

Ferrer invokes three forms of its coverage: Business Income, Extra Expense, and Civil Authority coverage. Under the policy, Cincinnati Insurance was obligated to pay for lost business income and extra expenses caused by or resulting from a "Covered Cause of Loss." Additionally, "[w]hen a Covered Cause of Loss causes damage to property," Cincinnati Insurance was obligated to pay for lost business income and extra expenses "caused by action of civil authority that prohibits access to the 'premises', provided that … [t]he action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage[.]"

Under the policy, a "Covered Cause of Loss" is a "direct 'loss' unless the loss is excluded or limited in this Coverage Part," and "loss" is an "accidental physical loss or accidental physical damage." So, to recover under any of the three forms of coverage, there must be a physical loss or physical damage to the Ferrer's property.

Here, there was no Covered Cause of Loss as there was no underlying physical loss or damage to insured property. As in *Terry Black's Barbecue*, there is no physical loss without "any tangible alteration or deprivation of [the insured's] property."[12] While COVID-19 has wrought great physical

---

[11] *Pan Am Equities, Inc. v. Lexington Ins. Co.*, 959 F.3d 671, 674 (5th Cir. 2020) (discussing Texas contract interpretation law for insurance policies).

[12] *Terry Black's Barbecue*, 22 F.4th at 456. *See also* 10A Couch on Ins. § 148:46 (3d ed.) ("The requirement that the loss be 'physical,' given the ordinary definition of that term, is widely held … to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property." (footnotes omitted)).

No. 21-11046

harm to people, it does not physically damage property within the plain meaning of "physical."[13] Ferrer was not deprived of its property nor was there a tangible alteration to its property, so there was no underlying "direct 'loss'" to trigger coverage.

Alternatively, Ferrer argues that amendments to the policy make it ambiguous so as to require interpretation of the policy in its favor. This is not so. The amendments state that, "Direct physical 'loss' is now described simply as direct 'loss', thereby dropping the unneeded word *physical*." This did not create an ambiguity as to whether a "loss" needed to be physical. "Physical" was an unneeded word because "loss" was already defined as "accidental physical loss or accidental physical damage." The amendment did not bring ambiguity to the relevant provisions of the policy.

## IV.

As Ferrer's alleged losses were not covered under the terms of the policy, it failed to allege a plausible claim. The district court's judgment dismissing with prejudice Ferrer's claims is AFFIRMED.

---

[13] *U.S. Metals, Inc. v. Liberty Mut. Grp., Inc.*, 490 S.W.3d 20, 25 (Tex. 2015) ("To give 'physical' its plain meaning, a covered injury must be one that is tangible."); *see Great Am. Ins. Co. of New York v. Compass Well Servs., LLC*, No. 02-19-00373-CV, 2020 WL 7393321, at *14 (Tex. App.—Fort Worth Dec. 17, 2020), *rev. denied* (Jan. 28, 2022) ("[A]n intangible or incorporeal loss that is unaccompanied by a distinct, demonstrable, physical alteration of the property is not considered a direct physical loss.").